IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OBERMAYER REBMANN MAXWELL & HIPPEL LLP, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 15-81 ) |
| JOHN H.C. WEST, III, and RESTORATIVE PROGRAMMING, INC., | ) ) ) |
| and | ) ) |
| FAST TRAK INVESTMENT COMPANY LLC, | ) Judge Cathy Bissoon ) ) |
| and | ) ) |
| RJC FUNDING, LLC, | ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM AND ORDER[1]

### I. MEMORANDUM

This matter is before the Court upon a Motion for Summary Judgment filed by Defendants Fast Trak Investment Company LLC ("Fast Trak") and RJC Funding, LLC ("RJC") (Doc. 31), and a Motion to Dismiss filed by Plaintiff Obermayer Rebmann Maxwell & Hippel LLP ("Obermayer") (Doc. 26). For the reasons that follow, both Motions will be granted.

### BACKGROUND

In June 2011, Counter-Claim Defendant John H.C. West, III ("West"), the sole owner of Restorative Programming, Inc. ("RPI"), commenced a civil action in New Jersey Superior Court captioned as West v. Reed Smith. Def. Fast Trak's Conc. Stmt. Mat. Facts ("Fast Trak Conc.

---

[1] Having reviewed the parties' positions regarding the sealing of certain materials in this case, *see, e.g.*, Docs. 16 &17, the Court has determined that there are insufficient grounds for excluding the instant filing from the public record.

Stmt.") (Doc. 33) at ¶ 5. While awaiting the outcome of that litigation, West entered into a series of financial transactions with Fast Trak and RJC[2] in order to obtain funds to be used for basic living expenses. Def. West's Conc. Stmt. Mat. Facts ("West Conc. Stmt.") (Doc. 42) at ¶¶ 17-20. West obtained a total of $107,000 from Fast Trak and a total of $51,000 from RJC. Fast Trak Conc. Stmt. at ¶¶ 6-9.

The parties formalized each of the transactions by entering into an Assignment, Sale, Springing Assignment and Equitable Lien Agreement ("Assignment Agreement"). Id. ¶ 6. The Assignment Agreements characterize the financial transactions as "purchases" of an interest in the future proceeds, if any, obtained by West and RPI through the litigation in West v. Reed Smith. See, e.g., Doc. 34-3 at 1. Each Assignment Agreement expressly states that: "This is a non-recourse purchase agreement. There is no obligation for seller to make payment except from the proceeds of [West v. Reed Smith]." Id. The Assignment Agreements provide that Fast Trak is entitled to receive West's "entire right, title and interest in a portion of the proceeds" of the West v. Reed Smith litigation, in an amount to be determined by a "Payment Schedule" included in the agreement. Id. The "Total Pay-Off Amounts" listed on the payment schedules increase every six months from the "Anniversary" of each agreement. Id.

At all pertinent times, West and RPI were represented by Attorney Bruce S. Fox of the Obermayer law firm. Id. at 7-8. In a section of the Assignment Agreements entitled "IRREVOCABLE INSTRUCTIONS TO COUNSEL," each agreement specifies that counsel for West/RPI must pay any amount owed to Fast Trak/RJC from the proceeds of the ultimate recovery in West v. Reed Smith prior to disbursing any funds to West. Id. at 5-6. Each agreement also contains an acknowledgment form, signed by Fox, indicating that counsel

---

[2] For the purposes of this ruling, Fast Trak and RJC will be collectively referred to as "Fast Trak" unless a distinction is explicitly warranted.

agrees to honor the repayment instructions set forth in each of the Assignment Agreements.  Id. at 7-8.

In December 2014, the parties to West v. Reed Smith resolved the litigation.  Fast Trak Conc. Stmt. at ¶ 13.  Fast Trak and RJC prepared payoff letters indicating that West owed $226,076.18 to Fast Trak and $147,808.82 to RJC from the proceeds of the settlement.  Id. at ¶ 11.

Obermayer commenced the instant interpleader action on January 16, 2015.  Doc. 1.  At the same time, Obermayer filed a motion pursuant to Rule 67 of the Federal Rules of Civil Procedure seeking leave to deposit funds into the Court.  Doc. 2.  Obermayer filed a renewed Rule 67 motion on January 29, 2015.  Doc. 15.  Fast Trak opposed Obermayer's motion, arguing that the instructions to counsel contained in the Assignment Agreements clearly required Obermayer to pay them directly from the proceeds of the West v. Reed Smith litigation prior to making any other disbursements.  Doc. 14.  Fast Trak also asserted a counterclaim against Obermayer for breach of contract, and cross-claims against West and RPI for breach of contract and enforcement of liens.  Docs. 14, 25.

The Court granted Obermayer's Rule 67 motion on February 2, 2015.  Doc. 18.  Obermayer, relying on the payoff amounts provided by Fast Trak and RJC, deposited $373,885.00 with the Court.  Doc. 18.  Obermayer then filed a motion seeking dismissal from this action.  Doc. 26.  Fast Trak and RJC, in turn, moved for summary judgment with respect to their cross-claims.  Doc. 31.  Each of these motions is ripe for review.

**ANALYSIS**

There are no disputed issues of fact concerning the existence and execution of the Assignment Agreements or Fast Trak's performance in accordance with those agreements.

Nor does West deny that he has failed to comply with the repayment obligations specified in those agreements. Instead, West seeks to avoid summary judgment by arguing that the transactions at issue are champertous and usurious. Before addressing each of these defenses, the Court must determine which state's laws govern this dispute.

Each of the Assignment Agreements explicitly states that it "shall be governed by and construed and enforced in accordance with the law of the State of New York without regard to its choice of law provisions." Doc. 34-3 at ¶ 6. "Forum selection clauses are entitled to great weight and are presumptively valid." Wall Street Aubrey Golf, LLC v. Aubrey, 189 F. App'x 82, 85 (3d Cir. 2006) (citations omitted). In Pennsylvania, courts "generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them" so long as the transaction "bears a reasonable relation to the chosen forum." Gay v. CreditInform, 511 F.3d 369, 390 (3d Cir. 2007) (citations omitted). A party's location in the chosen forum is typically sufficient to satisfy this standard. Id. (noting that the plaintiff's location in Virginia was sufficient to establish a "substantial relationship" with that forum).

West contends that the forum selection clause should be ignored because the transactions at issue have no reasonable connection with the state of New York. However, West has failed to support this argument with pertinent evidence or caselaw.[3] At the time that the agreements were ratified, Fast Trak and RJC's corporate headquarters were located in New York City. *See* Doc. 44-1; *see also* CreditInform, 511 F.3d at 390; Restatement (Second) Conflict of Laws § 187 comment f ("When the state of the chosen law has some substantial relationship to the

---

[3] West relies heavily upon the fact that the current tenant-list of the office building located at 1250 Waters Place, Bronx, New York, no longer lists Fast Trak and RJC as tenants. Doc. 41-2. However, Fast Trak and RJC occupied space in that building from their inception until a recent relocation to New Jersey, a time period encompassing the execution of each of the Assignment Agreements at issue. Doc. 44-2 at ¶ 2-3.

parties or the contract, the parties will be held to have had a reasonable basis for their choice. This will be the case, for example, when this state is that where performance by one of the parties is to take place or where one of the parties is domiciled or has his principal place of business.").[4] Moreover, as entities that engage in transactions in multiple states, Fast Trak and RJC have a legitimate interest in uniformity and predictability in their dealings. *See* Restatement (Second) Choice of Laws § 187 comment e (noting that parties to multi-state transactions can best protect their expectations and secure "certainty and predictability" by "choosing the law to govern the validity of the contract and the rights created thereby"). In light of the foregoing, the Court will enforce the forum selection clause in the Assignment Agreements and apply New York law.

  Turning back to West's affirmative defenses, the first one quickly can be rejected. As noted by Fast Trak, the affirmative defense of champerty is restricted to situations where a "corporation or association . . . solicit[s], buy[s] or take[s] an assignment of . . . a thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon." N.Y. Judiciary Law § 489(a). In other words, Section 489 prohibits "an acquisition of a cause of action by a stranger to the underlying dispute" for the "very purpose of bringing such suit." Richbell Info. Servs. v. Jupiter Partners, 280 A.D.2d 208, 216 (N.Y. App. Div. 2011). Section 489 is not implicated where a transaction occurs *after* the commencement of an action and merely assigns an interest in the proceeds of the claim, as in the instant case. *See* Doc. 34-3 at ¶ 2(a)(i); *see also*, *e.g.*, Fahrenholz v. Security Mut. Ins. Co., 13 A.D.3d 1085, 1086 (N.Y. App. Div. 2004) (holding that loans made after an action had already been commenced were not champertous because they were not made "with the intent and for the purpose of

---

[4] Pennsylvania courts have adopted section 187 of the Restatement (Second) Conflict of Laws.

bringing an action") (citations omitted). Indeed, West appears to have abandoned this defense. *See* West's Brief in Response (Doc. 43) (failing to address Fast Trak's arguments with respect to champerty).

West next contends that the transactions are usurious. In New York, a loan is void as usurious when it imposes an interest rate exceeding the permissible statutory maximum. Vitale v. Flocco, 2015 WL 8676052, at *2 (N.Y. Sup. Ct. Dec. 11, 2015). However, a usury defense is only applicable where the underlying transaction constitutes a loan. Seidel v. 18 E. 17th St. Owners, Inc., 79 N.Y.2d 735, 744 (N.Y. 1992) ("[u]sury laws apply only to loans or forbearances, not investments," and, "[i]f the transaction is not a loan, there can be no usury"). The hallmark of a loan, for purposes of the usury statute, is an absolute right to repayment or some form of security for the debt. "For a true loan it is essential to provide for repayment absolutely and at all events or that the principal in some way be secured as distinguished from being put in hazard." Zoo Holdings, LLC v. Clinton, 2006 WL 297730, at *4 (N.Y. Sup. Ct. Jan. 24, 2006) (quotations omitted). In other words, "there can be no usury unless the principal sum advanced is repayable absolutely." Transmedia Restaurant Co., Inc. v. 33 E. 61st Street Restaurant Corp., 710 N.Y.S.2d 756, 760 (N.Y. Sup. Ct. 2000). Under New York law, there is a strong presumption against finding a transaction usurious, and the party seeking to void the transaction must establish usury by clear and convincing evidence. *See* Zhavoronkin v. Koutmine, 860 N.Y.S.2d 561, 562 (N.Y. App. Div. 2008).

Recently, a number of courts have considered litigation-funding arrangements such as the Assignment Agreements and concluded that such agreements are not usurious under New York law. In Lynx Strategies v. Ferreira, 957 N.Y.S.2d 636 (N.Y. Sup. Ct. 2010), for example, the plaintiff, a litigation funding company, purchased an interest in the proceeds of an underlying

6

lawsuit by executing a "non-recourse" purchase agreement. The court held that this arrangement was not usurious:

> Respondents claim that the interest rate that was part of the arbitration award amounts to usury. However, a defense of usury is not applicable to the matter herein. The concept of usury applies to loans, which are typically paid at a fixed or variable rate over a term. The instant transaction, by contrast, is an ownership interest in proceeds for a claim, contingent on the actual existence of any proceeds. Had respondent been unsuccessful in negotiating a settlement or winning a judgment, petitioner would have no contractual right to payment. Thus, usury does not apply to the instant case.

Id. at 636 (citations omitted).

The court reached the same conclusion in MoneyForLawsuits V LP v. Rowe:

> [W]here a purported lender does not have an absolute right to repayment, the transaction is not a loan and the usury statute is inapplicable. Here, there is no dispute that CaseFunding had no absolute right to repayment under the Agreements. The Agreements explicitly provide that CaseFunding's right to payment is contingent upon defendants' success in the underlying state court litigation, that its right to payment is limited to the amount recovered through verdict or settlement, and that it has no right to payment if no recovery is obtained. Because CaseFunding's right to payment was contingent upon success and recovery in the underlying lawsuit, the transactions were not "loans" and the New York usury statute does not render them invalid.

Id., 2012 WL 1068171, at *10 (E.D. Mich. Jan. 23, 2012) (applying New York law), adopted by 2012 WL 1068760 (E.D. Mich. Mar. 29, 2012). Other courts consistently have reached the same result. See, e.g., Kelly, Grossman & Flanagan, LLP v. Quick Cash, Inc., 2012 WL 1087341, at *5-6 (N.Y. Sup. Ct. Mar. 29, 2012) (holding that transactions "creat[ing] ownership interests in proceeds of claims, contingent on the actual existence of any proceeds," were not usurious because "Plaintiffs would have no contractual right to payment had Defendants been unsuccessful in negotiating settlements or winning judgments in the underlying actions");

Dopp v. Yari, 927 F. Supp. 814, 822 (D.N.J. 1996) ("the rule adopted by the majority of jurisdictions, including New York and California, permits collection of interest rates in excess of the legal rate when the collection of the entire interest is at risk and depends upon a contingency").

In the instant case, the Assignment Agreements indicate that Fast Trak agreed "to purchase from [West] a portion of the Proceeds" of the West v. Reed Smith litigation. The agreements are styled as "non-recourse purchase agreements," and they state that "[t]here is no obligation for seller to make payment except from the proceeds of the matter/litigation." Doc. 34-3 at 1. As in each of the foregoing cases, the Assignment Agreements created contingent, uncertain rights to the proceeds of an underlying lawsuit, recoverable only in the event that a settlement or favorable verdict eventually was reached. Consistent with Ferreira, Rowe and Quick Cash, such agreements do not amount to usurious loans under New York law.

Seeking a different result, West relies heavily on Echeverria v. Estate of Lindner, 801 N.Y.S.2d 233 (N.Y. Sup. Ct. 2005). In Echeverria, the court suggested that a similar litigation-funding arrangement might violate the state's usury laws:

> The court finds that LawCash is lending money at usurious rates. Also, that it is ludicrous to consider this transaction anything else but a loan unless the court were to consider it legalized gambling. Is it a gamble to loan/invest money to a plaintiff in a Labor Law action where there is strict liability? I think not. In fact, it might be considered a "sure thing." In any event, the only gambling allowed in this state is run by the state or on Native American facilities. Thus, it is not a gamble, but a "sure thing", therefore, it is a loan, not an investment with great risk. If it is a loan, then the interest rate charged is usurious and the court could vitiate the agreement.

Id. at *8. However, given that the only issue properly before the Echeverria court was a determination of damages, the court's speculation as to whether the transactions were usurious

clearly was dicta. *See* id. at *1 ("In the instant case the court is not asked to address any issue beyond damages."). Moreover, the court's conclusion relied entirely on the fact that the underlying litigation in that case involved a strict liability statute, rendering the plaintiff's eventual recovery a "sure thing." Id. at *8. Any doubts regarding the actual existence of a "sure thing" in the law notwithstanding, no such circumstances are presented in the instant case. As such, the usury defense cannot insulate West and RPI from the entry of summary judgment.

The issue of liability having been decided, the Court turns to West's assertion that issues of fact remain regarding the amounts due under the Assignment Agreements. As previously noted, each of the agreements contains a "Payment Schedule" that provides for increasing repayment amounts in the event of a favorable result in the Reed Smith litigation. The amount by which the repayment increases is determined by reference to six month "Anniversaries." For example, for a transaction producing an initial investment of $40,000, the portion of the litigation proceeds repayable to Fast Trak "on or before the first six (6) month Anniversary" is $55,523.00. Doc. 34-3 at 1. The amount repayable "After Six (6) Month Anniversary, but on or before One Year Anniversary" is $66,298.00. Id. These increases continue indefinitely. Id.

The term Anniversary is not defined in any of the Assignment Agreements. In light of this absence, West contends that the term is ambiguous and equally susceptible to either of two interpretations: it can be measured from the date of the initial purchase/investment by Fast Trak, or it can be measured from the date of any ultimate recovery in the underlying litigation. West urges the Court to adopt the latter interpretation, the effect of which would be to limit Fast Trak's recovery to $244,572.62.

It is axiomatic that a contract must be "construed in accord with the parties' intent." Greenfield v. Philles Records, Inc., 780 N.E.2d 166 (N.Y. 2002). "The best evidence of what

9

parties to a written agreement intend is what they say in their writing. Therefore, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." Id. (citations omitted). "[A] contract should be read as a whole, and every part will be interpreted with reference to the whole; and if possible it will be so interpreted as to give effect to its general purpose." Beal Sav. Bank v. Sommer, 865 N.E.2d 1210, 1213-14 (N.Y. 2007) (quotations omitted).

West's argument fails for at least two reasons. First, the Assignment Agreements explicitly state that repayment of Fast Trak's investment "shall be made within five (5) business days of receiving cleared Proceeds" in the underlying Reed Smith litigation. Doc. 34-3 at 7. If the "Anniversary" referred to in the agreements is construed to mean the date on which the litigation proceeds are received by West, the requirement that payment be made within five days would conflict with, and render superfluous, the entire "Payment Schedule." Such an interpretation would violate the well-established principle that "[a] reading of the contract should not render any portion meaningless." Sommer, 865 N.E. 2d at 1214.

Secondly, even if the agreements themselves were ambiguous, West's contemporaneous conduct indicates that he understood that any repayment due would be calculated from the date on which he received Fast Trak's initial investment, rather than the date of his ultimate recovery. When West sought additional funds from Fast Trak and RJC in September 2014, those entities, having already invested significant funds in the Reed Smith litigation, requested an acknowledgement from West of the amounts already potentially due. Doc. 34-16. Fast Trak's letter included repayment figures calculated on the basis of the Payment Schedules included in the Assignment Agreements and indicated that those figures would increase again "after fourteen (14) days hereof." Id. West signed that agreement, indicating that he understood and accepted

that the figures provided by Fast Trak were accurate and reasonable. Id. In light of this clear manifestation of the parties' intent, any argument in favor of a different calculation method is unavailing. *See*, *e.g.*, Viacom Int'l, Inc. v. Lorimar Prods., Inc., 486 F. Supp. 95, 98 n. 3 (S.D.N.Y. 1980) ("The practical interpretation of a contract by the parties, manifested by their conduct subsequent to its formation for any considerable length of time before it becomes a subject of controversy, is entitled to great, if not controlling weight in the construction of the contract.").

In light of the foregoing, Fast Trak and RJC have demonstrated their entitlement to summary judgment, regarding both liability and with respect to the term "Anniversary," as used in the Assignment Agreements. Consistent with the foregoing, the Court hereby enters the following:

## II. ORDER

Fast Trak's Motion (**Doc. 31**) for Summary Judgment against West and RPI is **GRANTED**; Obermeyer's Motion to Dismiss (**Doc. 26**) is **GRANTED**; and Obermeyer is released from any further liability in this case.[5] In addition, by **January 8, 2016**, Fast Trak shall file and serve a proposed, signature-ready judgment order, for entry against West and RPI, only, along with appropriate supporting materials. The proposed judgment order shall assume that the Court will direct the Clerk to pay over to Fast Trak and RJC all sums held in the Court's Registry in connection with this case. Should West/RPI wish to file objections to the proposed judgment,

---

[5] In granting Fast Trak and RJC's request for summary judgment, the Court holds them bound to their assertion that any remaining claims against Obermeyer are moot. *See* Fast Trak's Br. (Doc. 32) at 7 n.1 (contemplating same, so long as final judgment includes payment of monies deposited by Obermeyer into Court Registry). Based on the record before the Court, there is no just reason to impose liability against Obermeyer for any judgment amount entered against West and RPI in excess of the sums deposited. Obermeyer permissibly, and in the Court's mind, properly, invoked the interpleader mechanism in this case.

they must do so by **January 15, 2016**, and they shall affix a counter-proposed, signature-ready judgment order.

    IT IS SO ORDERED.

December 30, 2015                                                  s\Cathy Bissoon
                                                                        Cathy Bissoon
                                                                        United States District Judge

cc (via ECF email notification):

All Counsel of Record